## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

THE DINNER BELL CAFÉ, INC., BILL'S PIZZA PALM SPRINGS, and BILL'S GRILL 1 LLC, individually and on behalf of all others similarly situated,

             Plaintiffs,

       v.

NORTH AMERICAN BANCARD, LLC,

             Defendant.

Case No. _____

Complaint – Class Action

## <u>CLASS ACTION COMPLAINT</u>

Plaintiffs The Dinner Bell Café, Inc. ("Dinner Bell"), Bill's Pizza Palm Springs ("Bill's Pizza"), and Bill's Grill 1 LLC ("Bill's Grill") (collectively, "Plaintiffs," unless otherwise identified), individually and on behalf of all others similarly situated (the "Class," as defined below), complain and allege as follows based on personal knowledge as to themselves and on information and belief as to all other matters, against Defendant North American Bancard, LLC ("NAB LLC" or "Defendant"):

# I. **NATURE OF THE ACTION**

1.      Plaintiffs, individually and on behalf of all others similarly situated, bring this action against NAB LLC, a nationally-operating payment card processor, for its use of unfair, unlawful, and fraudulent business practices in violation of Georgia state law.

2.      NAB LLC promised the merchants with which it contracts that it would pass through, at cost, the per-transaction network access and brand usage ("NABU") fees imposed by card networks VISA and MasterCard, and would not inflate or mark up those fees.

3.      In breach of this promise, NAB LLC has, starting no later than August 2013 through at least December 2013 (the "Class Period") – and likely well beyond December 2013 – inflated or marked up those fees, without disclosing the inflation or mark-up to its merchant clients, including Plaintiffs and the other Class members.

4.      NAB LLC has reaped substantial gains on the basis of its false promise, and, to the extent it continues to inflate the NABU fees it charges all or a portion of its client base, stands to continue obtaining these ill-gotten funds from the merchants that remain under contract with it.

5.     Plaintiffs are merchants that were, until approximately December 2013, under contract with NAB LLC, when they terminated their contracts with NAB LLC as a result of NAB LLC's wrongful conduct as alleged herein.

6.     As alleged in detail herein, NAB LLC has deceptively, unfairly, unlawfully, and fraudulently misrepresented the per-transaction NABU fees charged to Plaintiffs and the other Class members, causing Plaintiffs and the other Class members to incur monetary losses.  By overcharging Plaintiffs and other Class members for NABU fees, misrepresenting the amount of the NABU fees NAB LLC intended to charge Plaintiffs and other Class members, and misrepresenting the nature of the inflated NABU fees on each Plaintiff's and each of the other Class members' monthly invoices (which included an arbitrary and illicit premium imposed by NAB LLC), NAB LLC breached its contracts with Plaintiffs and the other Class members as well as the implied covenant of good faith and fair dealing, fraudulently omitted and/or fraudulently represented material facts relied upon by Plaintiffs and the other Class members, fraudulently induced Plaintiffs and other Class members to contract with NAB LLC, and was unjustly enriched by its misconduct at the expense of Plaintiffs and the other Class members.  Plaintiffs, individually and on behalf of the other Class members, seek

declaratory, injunctive, and monetary relief, including restitution and damages, and attorneys' fees and costs of suit.

## II.  <u>JURISDICTION AND VENUE</u>

7.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d)(2) because there are more than 100 Class members and the aggregate amount in controversy exceeds $5 million exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

8.     This Court has personal jurisdiction over Defendant because Defendant conducts substantial business within this state, such that Defendant has significant, continuous, and pervasive contacts with the state of Georgia.  The Northern District of Georgia is also the forum designated by Defendant's contract with Plaintiffs.  *See* Exhibit 10 at ¶25.

9.     Venue lies within this judicial district under 28 U.S.C. § 1391 because Defendant conducts business in this district, and a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this district.

## III.  <u>PARTIES</u>

*Plaintiffs*

10.    Dinner Bell is an entity incorporated under the laws of the state of Arizona with its principal place of business in Prescott, Arizona.  Dinner Bell

operates a restaurant in Prescott, Arizona.  Dinner Bell entered into a contract with NAB LLC by executing a Merchant Application in substantially the same form as that appended hereto as Exhibit 10 in or about April 2013.

11.     Bill's Pizza is a sole proprietorship with its principal place of business in Palm Springs, California.  Bill's Pizza entered into a contract with NAB LLC by executing a Merchant Application in substantially the same form as that appended hereto as Exhibit 10 in or about April 2013.

12.     Bill's Grill is an Arizona limited liability company with its principal place of business in Prescott, Arizona.  Bill's Grill operates a restaurant in Prescott, Arizona.   Bill's Grill entered into a contract with NAB LLC by executing a Merchant Application in substantially the same form as that appended hereto as Exhibit 10 in or about April 2013.

### Defendant

13.     NAB LLC is a privately-held registered merchant services provider headquartered in Troy, Michigan and incorporated under the laws of the state of Delaware.  NAB LLC processes over $16 billion per year in electronic transactions for over 250,000 merchant clients located in all fifty states.  NAB LLC has annual revenues of over $500 million and employs over 600 individuals and over 3,000

independent merchant representatives.  NAB LLC is one of the world's largest merchant services providers, as measured by volume of transactions processed.

## IV. <u>FACTUAL ALLEGATIONS</u>

**A.**    ***NAB LLC is a Payment Processor***

14.    NAB LLC's primary business is in electronic payment processing.

15.    NAB LLC's clients are merchants seeking the ability to accept credit and debit card payments from their customers.

16.    NAB LLC provides its services to merchants in conjunction with two back-end credit card processing companies: Global Payments Direct, Inc. ("GPI") and First Data Corporation ("FDC").

17.    NAB LLC facilitates the processing of credit and debit card payments through either the GPI or FDC back-end systems, and offers its own in-house account management and merchant support services.

18.    In the payment processing industry, NAB LLC is known as an "independent sales organization," or "ISO."  An ISO is an organization that is not a Credit Card Association member (*i.e.*, not a VISA or MasterCard member bank) but has a bank card relationship with one or more Credit Card Association members.  ISOs can perform a number of functions, including but not limited to processing payment cards using Credit Card Association networks.

19.     NAB LLC, like all card payment processors, provides services to merchants to ensure that transactions are properly credited to the merchant and charged to the customer through the bank or other financial institution that issued the customer's credit or debit card.

20.     Each time a customer's credit or debit card is used to make a payment (*e.g.*, swiped through a point-of-sale terminal at a retail store, restaurant, or other place of business, or entered into an online payment form), information is collected for transmission through the payment processing system operated by the card payment processor, so that the merchant can receive the proceeds of the transaction; the issuing bank or financial institution and the card networks (such as VISA, MasterCard, and Discover Card) can receive their fees; and the customer's account can be correctly charged.

21.     NAB LLC, as a payment processing entity, is an intermediary between these parties (*i.e.*, merchants such as Plaintiffs and the other Class members, card issuing banks or financial institutions, and card networks such as VISA, MasterCard, and Discover Card) as well as its back-end payment processing partners, GPI and FDC.  NAB LLC is responsible for ensuring the fees owed to it and any relevant third parties, including the card networks, are properly allocated.



22.     NAB LLC earns its revenues primarily through per-transaction fees. For every card transaction it processes, NAB LLC is entitled to a small percentage of the transaction amount, which percentage has been previously disclosed to the merchants on behalf of which NAB LLC processes payments in the operative contracts' pricing schedules.

23.     As alleged herein, however, NAB LLC has during the Class Period fraudulently, unlawfully, and unfairly inflated certain fees charged by the card networks, to the detriment of merchants, including Plaintiffs and the other Class members.

24.     Plaintiffs and the other Class members are merchants that contracted with NAB LLC to accept credit and debit card payments from their customers.

According to the terms of these contracts, which are substantially uniform, as alleged in more detail below, Plaintiffs and the other Class members agreed to allow NAB LLC to deduct certain disclosed per-transaction fees in exchange for NAB LLC's payment card processing services, described above and set forth in the operative contracts.

**B.     *NAB LLC Markets its Payment Processing Services Using Pricing Models That Require Network Access Fees to be Passed Through at Cost, but Impermissibly Inflates Those Fees***

25.     The predominant pricing model used by payment processors, including NAB LLC, that serve small and mid-size consumer-oriented merchants is commonly referred to as an "interchange-plus" (or "cost-plus") model.  Another popular pricing model used by payment processors, including NAB LLC, is commonly referred to as a "tiered-rate" pricing model.

26.     Both interchange-plus and tiered-rate pricing models require the payment processor to pass through to merchants the actual Network Access Brand Usage, or "NABU," fees imposed by the card networks (such as VISA, MasterCard, and Discover).  These NABU fees are also sometimes referred to as "Dues and Assessments" in the card payment industry.

27.     Interchange-plus pricing consists of charging merchants standardized interchange and NABU fees determined by the financial institution that issued the

card (like Wells Fargo, HSBC, and similar institutions) and the card networks (VISA, MasterCard, and Discover), plus a separate, fixed, disclosed mark-up on interchange fees imposed by NAB LLC, on a per-transaction basis.  This pricing model also allows NAB LLC to impose a flat "authorization fee" on a per-transaction basis.

28.    One of the key benefits to merchants of the "interchange-plus" pricing model is supposed to be the transparency of this model to merchants.  Payment processors using this pricing model itemize the fees charged to merchants, including the separate mark-up charged by the payment processor.

29.    As one industry publication states, "Interchange-plus is the most transparent, cost-effective form of merchant account pricing.  The separation of processing costs with interchange-plus also allows for the optimization of interchange expenses. … By passing interchange fees directly to merchants with a fixed markup, surcharges and hidden costs are generally eliminated." (http://www.cardfellow.com/blog/interchange-plus-pricing/).

30.    The separate interchange mark-up, and the authorization fee charged to merchants through the interchange-pus pricing model, represents the amount NAB LLC is lawfully and contractually entitled to be paid for its payment processing services.  By contrast, the NABU fees (or Dues and Assessments) are

imposed by the card networks, and are required to be passed through *at cost* by NAB LLC to the merchants.

31.  Indeed, NAB LLC promises its merchant-clients that, "**Card association assessments will be passed through**," and identifies the NABU fees that it may charge merchants for VISA, MasterCard, Discover, and PayPal transactions. *See* Exhibit 10 at 10 (Pricing Schedule).

32.  Further, the standard interchange-plus pricing practice is to separately itemize the NABU and interchange fees charged and the payment processor's premium or mark-up on interchange fees.  NAB LLC adheres to this standard practice.

33.  In tiered-rate pricing models, the interchange, NABU, authorization, and other fees assessed are not separately disclosed on merchants' monthly invoices.  Nevertheless, in tiered-rate pricing models just as in interchange-plus pricing models, NABU fees must be passed through at cost because payment processors have no ability to modify those fees, which are imposed by card networks.

34.  Neither NAB LLC nor any of its affiliates or partners (such as GPI or FDC) has the lawful power or ability to modify the NABU fees charged to merchants, as these are imposed by the card networks.

35.     No later than August 2013, NAB LLC began to engage in improper conduct with respect to the NABU fees it charges to its merchant clients, including Plaintiffs and the other Class members.

36.     In particular, as alleged below, at that time, NAB LLC began to systematically inflate, for its own benefit, the NABU fees charged by the card networks to merchants, which are supposed to be passed through at cost (*see, e.g.*, Exhibit 10 at 10 (Pricing Schedule)), in order to extract greater profits from merchant clients.

37.     In its monthly invoices to merchants, including Plaintiffs, NAB LLC deceptively misrepresented those inflated fees as neutral network fees over which NAB LLC has no control, pocketing the difference between its actual network fee costs imposed by the card networks and the inflated network fees it charges merchants.  This inflation is ***in addition to*** the fees to which NAB LLC is lawfully and contractually entitled.

38.     This particular misrepresentation occurs in the following way.  Each month, NAB LLC distributes invoices to its merchant clients, including Plaintiffs and the other Class members, itemizing the charges made against the merchants' accounts.  Several monthly per-transaction charges on NAB LLC's invoices are

labeled "CHGB."   Among these charges are the NABU fees imposed by the card networks.

39.     Starting on a presently unknown date in 2013, but no later than August 2013, NAB LLC began charging its merchants, including Plaintiffs, more than 150% of the permissible NABU fees, which NAB LLC, as a processor and in accordance with its contracts with merchants (*see* Exhibit 10 at 10 (Pricing Schedule)), is required to pass through to its merchants at cost.

40.     As of August 2013, the permissible NABU fees imposed by VISA were $0.0218 per transaction, and the same fees imposed by MasterCard were $0.0208 per transaction.   These figures are reflected in NAB LLC's Pricing Schedule.   *See* Exhibit 10 at 10 ("Card association assessments will be passed through.   MasterCard Network Access Fee: $0.0208.   Visa Network Access Fee: $0.0218.").



41.     However, as shown on page 4 of the attached Exhibit 1 (an invoice dated November 29, 2013), NAB LLC charged Dinner Bell **$0.0368** per transaction for MasterCard transactions and **$0.0378** per transaction for VISA transactions.  These charges appear under the heading "Other Fees" (starting on page 3 of Exhibit 1).



42.     The first "Other Fees" item identifies 980 VISA card transactions and imposes a fee of $0.19 per transaction.  This is an "authorization" fee that is legitimate and not the subject of this litigation.  The second "Other Fees" item (on page 4) identifies 88 MasterCard card transactions and imposes a fee of $0.19 per transaction.  This is another "authorization" fee that is legitimate and not the subject of this litigation.

43.     Three items designated "CHGB" appear beneath the two authorization charges on page 4 of Exhibit 1.  The second "CHGB" item reflects the MasterCard NABU fees charged by NAB LLC to Dinner Bell for the month covered by the invoice.  For 86 of the 88 MasterCard card transactions, NAB LLC charged Dinner

Bell $0.0368 per transaction, for a total MasterCard NABU fee of $3.16. The remaining two MasterCard card transactions were not subjected to the charge because the transactions were not processed due to, *e.g.*, insufficient funds in the customer account.

44.     The third "CHGB" item reflects the VISA NABU fees charged by NAB LLC to Dinner Bell for the month. For all 980 VISA card transactions, NAB LLC charged Dinner Bell $0.0378 per transaction, for a total VISA NABU fee of $37.04.

45.     NAB LLC thus arbitrarily, and impermissibly, increased the MasterCard NABU fee – which is supposed to be passed through at cost by NAB LLC to its merchants (at the time, $0.0208) – by $0.0160 per transaction.

46.     NAB LLC also arbitrarily, and impermissibly, increased the VISA NABU fee – which is also supposed to be passed through at cost by NAB LLC to merchants (at the time, $0.0218) – by $0.0160 per transaction.

47.     NAB LLC's arbitrary and impermissible increases of the MasterCard and VISA NABU fees do not represent NAB LLC's legitimate premium on the "interchange-plus" pricing model.

48.     Indeed, NAB LLC's premium (the "plus" component of "interchange-plus") is reflected in the section of the invoice preceding "Other Fees," under

"Settlement/Discount" (plus the flat authorization fees under "Other Fees").  The fees identified in "Settlement/Discount" and the flat authorization fees are NAB LLC's processing fees.

49.   In its contract with NAB LLC, Plaintiff Dinner Bell agreed to a pricing model providing for pass-through of interchange and assessments (including NABU fees), plus a $0.19 per-transaction authorization fee and a "discount rate" of 58 basis points per transaction.  (After Dinner Bell contracted with NAB LLC to receive a discount rate of 58 basis points, Dinner Bell requested a reduction of its discount rate from 58 basis points to 50 basis points, a request to which NAB LLC agreed.   Neither Dinner Bell's request nor NAB LLC's agreement to reduce the discount rate applicable to Dinner Bell involved any allegation of wrongdoing or otherwise concerned the subject matter of this litigation.)  The 50 basis point discount rate and the corresponding fees properly charged by NAB LLC appear under the "Disc Rate" column in the "Settlement/Discount" portion of Plaintiff Dinner Bell's invoices.

50.   As Exhibit 1 demonstrates, NAB LLC's legitimate premium (with respect to Plaintiff Dinner Bell) is 0.5% of each transaction processed (reflecting a

50 basis point discount rate, as noted above), plus a $0.19 authorization fee for each transaction.[1]

51.   In their contracts with NAB LLC, Plaintiffs Bill's Pizza and Bill's Grill agreed to a pricing model providing for pass-through of interchange and assessments (including NABU fees), plus a $0.19 per-transaction authorization fee and a "discount rate" of 58 basis points per transaction.  This discount rate and the corresponding fees properly charged by NAB LLC appear under the "Disc Rate" column in the "Settlement/Discount" portion of those Plaintiffs' invoices.

52.   In response to a query by Plaintiffs' former merchant account representative in 2014, NAB LLC customer service confirmed that the CHGB items discussed herein are, in fact, purported to represent NABU charges.

53.   Four further invoices for Dinner Bell covering the months of August 2013, September 2013, October 2013, and December 2013 are attached as Exhibits 2, 3, 4, and 5.  Each of the invoices reflects identical inflated NABU fees for both VISA and MasterCard charges under the guise of "CHGB" items.

54.   Plaintiff Bill's Pizza was subjected to precisely the same wrongdoing by NAB LLC for a period of at least two months.  NAB LLC charged Bill's Pizza

---

[1] The value of an authorization fee is a matter of negotiation and is not uniform for all merchants.  In any event, the authorization fees are not at issue in this litigation.

the same inflated, impermissible NABU fees that it charged Dinner Bell. Two invoices for Bill's Pizza covering the months of August 2013 and September 2013 are attached as Exhibits 6 and 7. The inflated NABU fees for both VISA and MasterCard charges appear in each such invoice under the guise of "CHGB" items, as explained above with respect to Dinner Bell.

55.   Although NAB LLC never altered its fraudulent activity with respect to Dinner Bell, NAB LLC appears to have reverted to ordinary, permissible NABU fees for Bill's Pizza in October 2013.

56.   Plaintiff Bill's Grill was also subjected to the same wrongdoing by NAB LLC for a period of at least two months. NAB LLC charged Bill's Grill the same inflated, impermissible NABU fees that it charged Dinner Bell. Two invoices for Bill's Grill covering the months of August 2013 and September 2013 are attached as Exhibits 8 and 9. The inflated NABU fees for both VISA and MasterCard charges appear under the guise of "CHGB" items, as explained above with respect to Dinner Bell.

57.   As it appears to have done for Bill's Pizza, NAB LLC reverted to ordinary, permissible NABU fees for Bill's Grill in October 2013.

58.   Therefore, at least as of August 2013, NAB LLC began charging its merchant clients, including Plaintiffs, approximately 150% of the permissible

NABU fees on a per-transaction basis, generating massive amounts of ill-gotten fees on a class-wide basis.

59.     NAB LLC's reversion, in or around October 2013, to ordinary, permissible NABU fees for Bill's Pizza and Bill's Grill demonstrates that NAB LLC has the capacity (though **not** the lawful right) to manipulate and control the NABU fees it collects from its merchants.

60.     The only reason NAB LLC ceased charging Plaintiffs Bill's Grill and Bill's Pizza inflated NABU fees in or around October 2013 is that their merchant account representative contacted NAB LLC to complain about the practice at that time.  Despite having received objections to the practice on behalf of Bill's Grill, Bill's Pizza, *and* Dinner Bell, NAB LLC did not rectify its conduct with respect to Dinner Bell.  Moreover, neither Bill's Grill nor Bill's Pizza were reimbursed for the improper overcharges.

61.     All three Plaintiffs terminated their agreements with NAB LLC by December 2013 as a direct consequence of NAB LLC's false, misleading, deceptive, and unfair inflation of the NABU fees it charged the Plaintiffs.

62.     Because Plaintiffs no longer contract with NAB LLC, Plaintiffs are presently unable to specify the date by which NAB LLC ceased its unlawful, unfair, and fraudulent inflation of NABU fees.  Plaintiffs allege, on information

and belief, that NAB LLC continued to inflate the NABU fees it charged merchants after December 2013, and still continues to charge at least some portion of its merchant clients approximately 150% of the permissible NABU fees on a per-transaction basis, resulting in appreciable losses for every Class member and enormous, unjustified gains for NAB LLC.   Plaintiffs intend to amend their pleading based on information obtained in discovery to specify the date on which NAB LLC ceased this practice, if it has, in fact, ceased that practice.   Because NAB LLC processes hundreds of millions, or billions, of individual transactions using VISA and MasterCard payment cards each year, and extracted an unfair premium of at least $0.0160 per transaction for a period of *at least* several months, NAB LLC has pilfered millions of dollars from its merchant clients, including Plaintiffs and the other Class members.

C.   ***Plaintiffs' and the Other Class Members' Contracts With NAB LLC Do Not Permit NAB LLC to Inflate the NABU Fees it Charges Them***

63.   The terms of the standard merchant service agreement governing NAB LLC's relationship with merchant clients provide that, "Fees and charges payable by Merchant shall be as set forth in the Merchant Application and these Terms and Conditions."  *See* Exhibit 10 at ¶5.  The same document provides that, "Card association assessments will be passed through."   *Id.* at 10 (Pricing Schedule).   The document then specifically identifies the accurate VISA and

MasterCard NABU fees: $0.0208 per transaction for MasterCard transactions, and $0.0218 per transaction for VISA transactions. *Id.*

64.    Although the merchant service agreement terms are updated from time to time, the terms at issue in this litigation have remained constant for the duration of the proposed Class Period.

65.    All merchants that contract with NAB LLC for payment processing services must enter into an agreement in substantially the same form, with substantially the same substantive terms, as the agreement appended hereto as Exhibit 10. This is true regardless of whether the back-end processing entity NAB LLC uses to perform certain processing actions is GPI or FDC, although Plaintiffs note that the version attached as Exhibit 10 pertains to contracts calling for back-end processing by GPI.

66.    The Merchant Application includes a "Pricing Schedule" that sets forth the permissible fees that NAB LLC may charge to process card transactions. The Pricing Schedule expressly provides that, "Card association assessments will be passed through" and identifies the "Mastercard Network Access Fee" as $0.0208 (per transaction) and the "Visa Network Access Fee" as $0.0218 (per transaction). *See id.* at page 10. These rates are consistent with the networks'

then-current NABU fees, which NAB LLC was required to pass through, without inflation or mark-up, to merchants.

67.     None of the other fees set forth in the Pricing Schedule account for NAB LLC's arbitrary inflation of the VISA and MasterCard NABU rates.  Under "Other Fees," the Merchant Application has an entry for "Interchange Fee Passthrough" ($0.10 for credit cards and $0.22 for check cards), but this entry pertains to a baseline fixed cost unrelated to the per-transaction fees at issue, and is not a subject of the present litigation.

68.     No other terms in Exhibit 10 authorize, or even purport to authorize, the inflated fees alleged in this Complaint.  Even if such other terms existed, they could not reasonably or fairly be construed to modify the Pricing Schedule plainly presented as an authoritative schedule of all fees for which merchants would under the contract be liable to NAB LLC.

69.     In each of the Plaintiffs' contracts with NAB LLC, the Pricing Schedule indicates, "Actual Interchange Passthrough and Assessments plus 58 BPS."  As alleged above, this language establishes that NAB LLC will "pass through" at cost the NABU fees imposed by the card networks, and will apply a discount rate of 58 basis points per transaction.

**D.**   *NAB LLC'S Practice of Inflating NABU Fees is Fraudulent*

70.   NAB LLC's practice of charging merchants inflated or marked-up NABU fees contradicts the express terms of the standard merchant service agreement, including the Pricing Schedule.

71.   NAB LLC has knowledge of its practice of charging inflated NABU fees to merchants, including Plaintiffs and the other Class members.

72.   NAB LLC's charges to merchants are captured using a fully automated withdrawal process (as reflected in Exhibit 10), and must be specified in advance by NAB LLC's merchant accounting and/or accounts receivable department.

73.   In addition, in October 2014, David Reiter, the merchant account representative that facilitated Plaintiffs' relationships with NAB LLC, attended an NAB LLC-operated Sales Conference in Detroit, Michigan, at which NAB LLC executives gave presentations to merchant account representatives and others.  At the conclusion of this conference, NAB LLC's chief executive officer, Marc Gardner, made himself available for a question-and-answer session.  This portion of the conference was videotaped.  The videotape is in the possession of NAB LLC.

74. At that question-and-answer session, Mr. Reiter pointedly asked Mr. Gardner about NAB LLC's decision to increase the NABU fees or dues and assessments it charges to merchants without disclosing that those fees have been marked up by NAB LLC.

75. Mr. Reiter expressly raised with Mr. Gardner the virtually identical practices of Mercury Payment Systems ("Mercury"), a competitor of NAB LLC that was recently sued in the Northern District of California by Heartland Payment Systems ("Heartland") under the Lanham Act and various California state statutes prohibiting unfair competition and fraudulent business practices.  *See Heartland Payment Systems, Inc. v. Mercury Payment Systems LLC*, No. 4:14-cv-00437-CW (N.D. Cal.).

76. In response, Mr. Gardner dismissed the notion that NAB LLC was following in Mercury's footsteps, and explained that, on the contrary, "***We*** [NAB LLC] ***show Mercury the way***" with respect to extracting a premium from merchant clients.

77. Mr. Gardner's candid admission demonstrates unequivocally that NAB LLC was and is fully aware of its deceptive and fraudulent inflation of NABU fees charged to merchants, as described herein.

**E.**   ***NAB LLC Fraudulently Induced All of the Affected Merchants to Enter Into Service Agreements***

78.    The terms of NAB LLC's merchant service agreement, including the Pricing Schedule, are provided to all merchants prior to the formation of a business relationship between merchants and NAB LLC.

79.    Indeed, a merchant's execution of a Merchant Application (included in Exhibit 10) is a prerequisite to engaging NAB LLC to conduct payment processing services.

80.    Thereafter, the Merchant Application must be "accepted" by NAB LLC and the other relevant entities (the back-end payment processing entity, such as GPI or FDC, and the member bank).  *See* Exhibit 10.

81.    The inflated or marked-up NABU fees or dues and assessments charged by NAB LLC are not disclosed in the terms of the merchant service agreement or in the Merchant Application.  Further, the fact that NAB LLC can, may, or will inflate or mark up those fees is not disclosed in the terms of the merchant service agreement or in the Merchant Application.

82.    The amount and nature of the fees charged by NAB LLC to process payment card transactions is highly material to merchants.  The purpose for which any merchant contracts with NAB LLC to acquire payment processing services is to process customer credit and debit cards for goods or services sold by the

merchant to the customer at the lowest possible rate. Any fees imposed by intermediaries like NAB LLC necessarily detract from the merchants' income.

83.   NAB LLC admits that the amount and nature of fees it charges to merchants is important to merchants. For example, on its website, NAB LLC advertises its services by advising prospective clients to, "Look for the Lowest Interchange Fees." (http://blog.nabancard.com/category/merchant-accounts/page/2/). NAB LLC also advises prospective clients that, "Interchange plus is a better plan for merchants … because the pricing is better." (http://blog.nabancard.com/merchant-account/understanding-your-credit-card-processing-statements/).

84.   Plaintiffs justifiably relied upon NAB LLC's agreement – as reflected in, among other things, Exhibit 10 – to pass through without inflating the NABU fees for which Plaintiffs (and the other Class members) would be liable. Plaintiffs' reliance on the express terms of the Merchant Agreement, including the Pricing Schedule, was justified because NAB LLC provided no basis to doubt the accuracy and truthfulness of those terms and the prices quoted.

85.   Based on Plaintiffs' review of the rates promised by NAB LLC and its competitors at the time Plaintiffs agreed to engage NAB LLC, NAB LLC had the

most favorable rates.  Upon this basis, Plaintiffs contracted with NAB LLC rather

than any of its competitors to obtain credit and debit card processing services.

**F.**    ***NAB LLC'S Class Action Waiver Clause is Unenforceable***

86.    Paragraph 25 of the terms of the merchant service agreement (Exhibit

10) states,

> Merchant waives trial by jury with respect to any litigation arising
> out of or relating to this Agreement.  Global [*i.e.*, GPI], Member
> [*i.e.*, the contracting bank], and Merchant agree that any and all
> disputes or controversies of any nature whatsoever (whether in
> contract, tort, or otherwise) arising out [sic], relating to, or in
> connection with (a) this Agreement, (b) the relationships which
> result from this Agreement, or (c) the validity, scope, interpretation
> or enforceability of the choice of law and venue provisions of this
> Agreement, shall be governed by the laws of the State of Georgia,
> notwithstanding any conflicts of laws rules, and shall be resolved, on
> an individual basis without resort to any form of class action and not
> consolidated with the claims of any other parties.

87.    This provision does not purport to express the agreement of NAB

LLC, or any merchant's agreement with NAB LLC, regarding the waiver of

merchants' rights to pursue legal claims on a classwide basis.

88.    To the extent the Court deems the class action waiver provision

enforceable, it has no applicability to this litigation, as it purports to waive that

right only with respect to actions between or among the three identified parties,

namely merchants, GPI, and the contracting bank, *not* NAB LLC.

89.     Moreover, the class action waiver is procedurally and/or substantively unconscionable, and is, therefore, unenforceable.

90.     The Supreme Court has acknowledged that, "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997).

91.     As the Eleventh Circuit has further recognized, "the effort and cost of investigating and initiating a claim may be greater than many claimants' individual stake in the outcome, discouraging the prosecution of these claims absent a class action filing procedure." *In re Charter Co.*, 876 F.2d 866, 871 (11th Cir. 1989).

92.     Consequently, if the class action waiver were deemed enforceable, all merchants damaged by NAB LLC's fraudulent practice of inflating the NABU fees without their authorization or agreement will be denied a remedy for their injuries. Each individual merchant was likely harmed by the loss of single- or double-digit dollar values (i.e., from under $1 to $99 each).  The slight monetary losses effectively mean that no merchant would invest the time or resources necessary to sue NAB LLC absent a mechanism for collective action.  This factor strongly

weighs against the validity of NAB LLC's class action waiver clause.  *Dale v. Comcast Corp.*, 498 F.3d 1216, 1221-24 (11th Cir. 2007).

93.     Third, the class action waiver is unenforceable because all merchants, including Plaintiffs and the other Class members, entered into their contracts with NAB LLC on the basis of NAB LLC's fraudulent misrepresentation of the fees it would charge merchants, and/or on the basis of NAB LLC's fraudulent omission of the fact that it would inflate the NABU fees charged to merchants.

94.     Thus, merchants, including Plaintiffs and the other Class members, were fraudulently induced to enter into their contracts with NAB LLC, and, as a result, the class action waiver is void (or voidable).

## V.  CLASS ACTION ALLEGATIONS

95.     Plaintiffs bring this action individually and on behalf of all others similarly situated as a class action pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

96.     The Class is defined as follows:

All persons or entities that (1) have contracted to receive payment processing services from NAB LLC on any pricing basis under which NABU fees would be passed through at cost, and (2) were charged an inflated NABU fee during the time period relevant to this action.

97.     Excluded from the Class are Defendant and its subsidiaries, parents, and affiliates; all persons who make a timely election to be excluded from the

Class; all claims for wrongful death, survivorship, and/or personal injury by Class members; governmental entities; and the judge to whom this case is assigned and his/her immediate family.  Plaintiffs reserve the right to revise the Class definition based on information learned through discovery.

98.    Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

99.    **Numerosity – Federal Rule of Civil Procedure 23(a)(1).**    The members of the Class are so numerous that individual joinder of all the members is impracticable.  On information and belief, there are not less than tens of thousands of merchants that have been damaged by NAB LLC's wrongful conduct as alleged herein.  The precise number of Class members and their addresses is presently unknown to Plaintiffs, but may be ascertained from NAB LLC's books and records.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

100.    **Commonality and Predominance – Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3).**  Numerous common questions of law and fact

exist as to Plaintiffs and the other Class members.  Such questions Class include, but are not limited to:

a.      Whether NAB LLC has acted and continues to act unlawfully by inflating fees charged to merchants, including Plaintiffs and the other Class members, for NAB LLC's own benefit;

b.      Whether NAB LLC has acted and continues to act unfairly by inflating fees charged to merchants, including Plaintiffs and the other Class members, for NAB LLC's own benefit;

c.      Whether NAB LLC has acted and continues to act deceptively, misleadingly, unfairly, unlawfully, and/or fraudulently by inflating fees charged to merchants, including Plaintiffs and the other Class members, for NAB LLC's own benefit;

d.      Whether NAB LLC's conduct alleged herein breached the terms of its contracts with merchants, including Plaintiffs and the other Class members, with which NAB LLC has engaged to process electronic payments on an interchange-plus pricing or tiered-rate pricing basis;

e.      Whether NAB LLC is liable to Plaintiffs and the other Class members for its practice of inflating fees charged to merchants for NAB LLC's own benefit;

f.    Whether NAB LLC should be enjoined from engaging in any or all of the unlawful, unfair, and/or fraudulent practices complained of herein.

NAB LLC has engaged in a common course of conduct toward Plaintiffs and the other Class members.  The common issues arising from this conduct that affect Plaintiffs and the other Class members predominate over any individual issues.  Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

101.  **Typicality – Federal Rule of Civil Procedure 23(a)(3).**  Plaintiffs' claims are typical of the other Class members' claims because, among other things, all members of the Class were comparably injured through the uniform misconduct described above.

102.  **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).**  Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other Class members they seek to represent; Plaintiffs have retained counsel competent and experienced in complex commercial and class action litigation; and Plaintiffs intend to prosecute this action vigorously.  Class members' interests will be fairly and adequately protected by Plaintiffs and their counsel.

103.   **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).**  NAB LLC has acted or refused to act on grounds generally applicable to Plaintiffs and the other Class members, thereby making appropriate final injunctive and declaratory relief, as described below.

104.   **Superiority – Federal Rule of Civil Procedure 23(b)(3).**  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiffs and each of the other Class members are small compared to the burden and expense that would be required to individually litigate their claims against NAB LLC, thus rendering it impracticable for Class members to individually seek redress for NAB LLC's wrongful conduct.  Even if Class members could afford individual litigation, the court system could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI.  CLAIMS FOR RELIEF

### COUNT I

### BREACH OF CONTRACT

105.    Plaintiffs restate and incorporate by reference the allegations in Paragraphs 1-104, above, as though fully set forth herein.

106.    Plaintiffs bring this claim individually and on behalf of all other Class members.

107.    NAB LLC misrepresented and failed to disclose the nature and amount of its pricing to Plaintiffs and the other Class members.

108.    In particular, NAB LLC represented to Plaintiffs and the other Class members that its price for payment processing services would be formulated on an "interchange-plus" (or "cost-plus") or "tiered-rate" basis, according to which the card network access/brand usage fees, or dues and assessments, imposed by VISA and MasterCard would be passed through to merchants at cost, without inflation or markup.  Indeed, NAB LLC expressly promised its merchant-clients that "Card association assessments will be passed through."[2]   Exhibit 10 at 10 (Pricing Schedule).  NAB LLC also identified the VISA and MasterCard NABU fees it

---

[2] In Plaintiffs' contracts with NAB LLC, the Pricing Schedule states, "Actual Interchange Passthrough and Assessments plus 58 BPS."

would charge merchants, including Plaintiffs, in the same document.  *See id.* (identifying applicable NABU fees for MasterCard transactions as $0.0208 per transaction, and for VISA transactions as $0.0218 per transaction).

109.   Beginning no later than August 2013, however, NAB LLC began to inflate the NABU fees it charged Plaintiffs and the other Class members, without authorization and in direct violation of the terms of its contracts with Plaintiffs and the other Class members, including the terms of the merchant service agreement and Merchant Application.

110.   Plaintiffs and the other Class members have performed their duties under these contracts.   In particular, Plaintiffs and the other Class members allowed NAB LLC to process credit and debit card payments on their behalf, and allowed NAB LLC to extract its fees and other funds prior to the receipt of funds by Plaintiffs and the other Class members.

111.   Plaintiffs and the other Class members reasonably expected NAB LLC not to inflate or mark up the NABU fees charged to them, based on the express terms of the contracts as alleged herein.

112.   As a direct result of the foregoing conduct of NAB LLC, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial.

## COUNT II

## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR

## DEALING

113.   Plaintiffs restate and incorporate by reference the allegations in Paragraphs 1-104 and 105-112, above, as though fully set forth herein.

114.   Plaintiffs bring this claim individually and on behalf of all other Class members.

115.   Every contract contains implied duties of good faith and fair dealing. NAB LLC owed Plaintiffs and the other Class members a duty of good faith and fair dealing in carrying out its obligations under the terms of its contracts with Plaintiffs and the other Class members, including in determining the rates at which Plaintiffs and the other Class members would be charged for payment processing services under the disclosed Pricing Schedule in Exhibit 10.

116.   NAB LLC violated its implied duties of good faith and fair dealing with respect to its agreement regarding the fees it would charge Plaintiffs and the other Class members by inflating or marking up, without disclosure and without authorization, the NABU fees, or dues and assessments, it in fact charged to Plaintiffs and the other Class members.

117.   As a direct result of the foregoing conduct of NAB LLC, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial.

## COUNT III

### FRAUDULENT OMISSION

118.   Plaintiffs restate and incorporate by reference the allegations in Paragraphs 1-104, above, as though fully set forth herein.

119.   Plaintiffs bring this claim individually and on behalf of all other Class members.

120.   As alleged herein, NAB LLC knew but failed to disclose that its pricing models included inflated or marked-up NABU fees, or dues and assessments.

121.   Plaintiffs and the other Class members reasonably expected the payment processing services provided to them by NAB LLC would be based on an "interchange-plus" (or "cost-plus") or "tiered-rate" basis, and that, accordingly, the NABU fees for which they would be charged would include only the NABU fees, or dues and assessments,  imposed by the card networks.  Indeed, NAB LLC expressly promised its merchant-clients that "Card association assessments will be

passed through."[3]  Exhibit 10 at 10 (Pricing Schedule).  NAB LLC also identified the VISA and MasterCard NABU fees it would charge merchants, including Plaintiffs, in the same document.  *See id.* (identifying applicable NABU fees for MasterCard transactions as $0.0208 per transaction, and for VISA transactions as $0.0218 per transaction).

122.   Plaintiffs and the other Class members executed the Merchant Application disclosing the permissible fees NAB LLC would charge them, and justifiably relied upon the terms of that document and the related merchant service agreement, as alleged herein.

123.   The nature and amount of fees NAB LLC charged to and collected from Plaintiffs and the other Class members were material to Plaintiffs and the other Class members.

124.   Had NAB LLC disclosed that it would not use a pricing model that would pass through the NABU fees, or dues and assessments, charged by the card networks at cost – and would, in fact, mark up and overcharge those fees – Plaintiffs and the other Class members would not have contracted with NAB LLC to receive payment processing services.

---

[3] In Plaintiffs' contracts with NAB LLC, the Pricing Schedule states, "Actual Interchange Passthrough and Assessments plus 58 BPS."

125.    Beginning no later than August 2013, NAB LLC began to inflate the NABU fees, or dues and assessments, it charged Plaintiffs and the other Class members, without authorization or disclosure of this fact.

126.    Furthermore, in each monthly invoice provided to Plaintiffs and other Class members by NAB LLC during the Class Period, NAB LLC failed to disclose that it had imposed an inflated or marked up NABU fee on a per-transaction basis. Had Plaintiffs and the other Class members been apprised of the true facts – that NAB LLC had inflated or marked up the NABU fees they were required to pay – they would not have continued obtaining credit card processing services from NAB LLC.

127.    Plaintiffs and the other Class members were damaged in an amount to be proven at trial as a result of NAB LLC's fraudulent omission and failure to disclose the true nature and amount of the fees it would charge them – and did charge them – during the Class Period.

## COUNT IV

### FRAUDULENT MISREPRESENTATION

128.    Plaintiffs restate and incorporate by reference the allegations in Paragraphs 1-104, above, as though fully set forth herein.

129.   Plaintiffs bring this claim individually and on behalf of all other Class members.

130.   As alleged herein, NAB LLC misrepresented its pricing structure by setting forth in its Pricing Schedule accurate, current VISA and MasterCard NABU fees.   NAB LLC expressly promised its merchant-clients that "Card association assessments will be passed through."[4]  Exhibit 10 at 10 (Pricing Schedule).   NAB LLC also identified the VISA and MasterCard NABU fees, or dues and assessments, it would charge merchants, including Plaintiffs, in the same document.  *See id.* (identifying applicable NABU fees for MasterCard transactions as $0.0208 per transaction, and for VISA transactions as $0.0218 per transaction). As alleged herein, NAB LLC, however, did not charge Plaintiffs and the other Class members consistently with those disclosed fees.   Rather, NAB LLC's true pricing structure included inflated or marked-up NABU fees charged to and collected from Plaintiffs and the other Class members.

131.   Plaintiffs and the other Class members reasonably expected that the payment processing services NAB LLC provided to them would be based on an "interchange-plus" (or "cost-plus") or "tiered-rate" basis, and that, accordingly, the

---

[4] In Plaintiffs' contracts with NAB LLC, the Pricing Schedule states, "Actual Interchange Passthrough and Assessments plus 58 BPS."

NABU fees for which they would be charged would include only the NABU fees, or dues and assessments, imposed by the card networks.

132.   Plaintiffs and the other Class members executed the Merchant Application disclosing the permissible fees NAB LLC would charge them, and justifiably relied upon the terms of that document and the related merchant service agreement, as alleged herein.

133.   The nature and amount of fees NAB LLC charged to Plaintiffs and the other Class members were material to Plaintiffs and the other Class members.

134.   Had NAB LLC disclosed that it would not use a pricing model that would pass through the NABU fees charged by the card networks at cost, Plaintiffs and the other Class members would not have contracted with NAB LLC to receive payment processing services.

135.   Furthermore, in each monthly invoice provided to Plaintiffs and other Class members by NAB LLC during the Class Period, NAB LLC represented that the fees charged were for purposes other than inflated or marked up NABU fees, disguising them under labels such as "CHGB."  In fact, those fees were arbitrarily inflated or marked up NABU fees, as alleged in more detail hereinabove.  Had Plaintiffs and the other Class members been apprised of the true facts – that NAB LLC had inflated or marked up the NABU fees they were required to pay – they

would not have continued obtaining credit card processing services from NAB LLC.

136.    Plaintiffs and the other Class members were damaged in an amount to be proven at trial as a result of NAB LLC's fraudulent misrepresentation and failure to disclose the true nature and amount of the fees it would charge them – and did charge them – during the Class Period.

## COUNT V

## FRAUDULENT INDUCEMENT

137.    Plaintiffs restate and incorporate by reference the allegations in Paragraphs 1-104, above, as though fully set forth herein.

138.    Plaintiffs bring this claim individually and on behalf of all other Class members.

139.    As alleged herein, NAB LLC misrepresented its pricing structure by setting forth in its Pricing Schedule accurate, current VISA and MasterCard NABU fees, and/or omitted to disclose that its pricing models included inflated or marked-up NABU fees.   NAB LLC expressly promised its merchant-clients that "Card association assessments will be passed through."[5]   Exhibit 10 at 10 (Pricing

---

[5] In Plaintiffs' contracts with NAB LLC, the Pricing Schedule states, "Actual Interchange Passthrough and Assessments plus 58 BPS."

Schedule).  NAB LLC also identified the VISA and MasterCard NABU fees, or dues and assessments, it would charge merchants, including Plaintiffs, in the same document.  *See id.* (identifying applicable NABU fees for MasterCard transactions as $0.0208 per transaction, and for VISA transactions as $0.0218 per transaction).

140.   As alleged herein, NAB LLC did not charge Plaintiffs and the other Class members consistently with its disclosed Pricing Schedule.  Rather, NAB LLC's true pricing structure included inflated or marked-up NABU fees.

141.   Prior to executing the Merchant Application and forming a contract with NAB LLC, Plaintiffs and the other Class members were deceived by NAB LLC with respect to the pricing structure NAB LLC would use in processing payments on their behalf.

142.   In particular, NAB LLC disclosed a Pricing Schedule (in Exhibit 10) that did not reflect the true pricing structure NAB LLC would use in processing payments.

143.   As alleged elsewhere herein, NAB LLC impermissibly and unlawfully inflated or marked up the NABU fees, or dues and assessments, it charged to Plaintiffs and the other Class members.

144.   As further alleged herein, NAB LLC knew that its disclosed Pricing Schedule did not accurately reflect the prices it would charge merchants, including

Plaintiffs and the other Class members, at the time the Pricing Schedule was published.

146.    The nature and amount of fees charged by NAB LLC to Plaintiffs and the other Class members were material to Plaintiffs and the other Class members. Had NAB LLC accurately represented that it would inflate the NABU fees, Plaintiffs and the other members of the Class would not have contracted with NAB LLC to receive payment processing services.

146.    Accordingly, Plaintiffs and the other Class members are entitled to seek damages and/or rescission of their contracts with NAB LLC or other equitable relief, including restitution of funds that NAB LLC took from them without permission.

## COUNT VI

### UNJUST ENRICHMENT

### (IN THE ALTERNATIVE TO CONTRACT-BASED CLAIMS)

147.    Plaintiffs restate and incorporate by reference the allegations in Paragraphs 1-104, above, as though fully set forth herein.

148.    Plaintiffs bring this claim individually and on behalf of all other Class members.

149.   Plaintiffs bring this claim in the alternative to their contract-based claims.

150.   As alleged herein, NAB LLC was unjustly enriched at the expense of the Plaintiffs and the other Class members, who were overcharged for NABU fees, or dues and assessments.

151.   Plaintiffs and the other Class members were unjustly deprived of money obtained by NAB LLC as a result of its undisclosed, unfair, unscrupulous, and unconscionable inflation of the NABU fees that NAB LLC charged to and collected from Plaintiffs and the other Class members.

152.   It would be inequitable and unconscionable for NAB LLC to retain the profit, benefit, and other compensation it obtained from Plaintiffs and the other Class members as a result of its wrongful conduct alleged herein.

153.   Plaintiffs and the other Class members are entitled to seek restitution from NAB LLC as well as an order from this Court requiring disgorgement of all profits, benefits, and other compensation obtained by NAB LLC by virtue of its wrongful conduct.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other Class members, respectfully request that the Court enter judgment in their favor and against NAB LLC as follows:

A.     Certification of the proposed Class, including appointment of Plaintiffs as Class Representatives and their counsel as Class Counsel;

B.     An order temporarily and permanently enjoining NAB LLC from continuing its unlawful, fraudulent, deceptive, and unfair business practices alleged in this Complaint;

C.     Further injunctive relief, including restitution of any sums obtained by NAB LLC from Plaintiffs and the other Class members as a result of its unlawful, fraudulent, deceptive, misleading, and unfair business practices;

D.     Actual damages, including treble, exemplary, and/or punitive damages, where allowable;

E.     Costs of suit and attorneys' fees;

F.     Pre- and post-judgment interest on any amounts awarded;

G.     Such other or further relief as may be appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all claims so triable.

**DATED:**  August 28, 2015

Respectfully submitted,

/s/ Kenneth S. Canfield

**DOFFERMYRE SHIELDS
CANFIELD & KNOWLES, LLC**
Kenneth S. Canfield (Ga. Bar 107744)
1355 Peachtree Street, Suite 1600
Atlanta, Georgia  30309
Tel: (404) 881-8900
kcanfield@dsckd.com

**GRANT & EISENHOFER P.A.**
Adam J. Levitt (*pro hac vice* pending)
30 North LaSalle Street, Suite 2350
Chicago, Illinois  60602
Tel: (312) 214-0000
Fax: (312) 214-0001
alevitt@gelaw.com

**GRANT & EISENHOFER P.A.**
Kyle J. McGee (*pro hac vice* pending)
123 Justison Street
Wilmington, Delaware  19801
Tel: (302) 622-7000
kmcgee@gelaw.com

**THE DICELLO LAW FIRM**
Mark DiCello (*pro hac vice* pending)
7556 Mentor Avenue
Mentor, Ohio  44060
Tel: (440) 953-8888
madicello@dicellowlaw.com

**STEVEN M. GOLDBERG CO., LPA**

Steven M. Goldberg (*pro hac vice* pending)
31300 Solon Road, Suite 12
Solon, Ohio  44139
Tel: (440) 519-9900
steven@smglegal.com

***Counsel for Plaintiffs and the Proposed Class***