IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

THE DINNER BELL CAFÉ, INC.;  :
BILL'S PIZZA PALM SPRINGS; and  :
BILL'S GRILL 1, LLC, individually  :
and on behalf of others similarly  :
situated,  :
                                        :
    Plaintiffs,  :          CIVIL ACTION NO.
                                          :          1:15-CV-3059-SCJ
    v.  :
                                          :
NORTH AMERICAN BANCARD,  :
LLC,  :
                                          :
    Defendant.  :
                                          :

## ORDER

This matter appears before the Court on Defendant's Motion to Dismiss the

Complaint for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). Doc.

No. [13].

## I.    BACKGROUND

When a customer uses their credit or debit card to pay, a series of events is

triggered. The most obvious parties to any such transaction are the customer and the

merchant—the person buying the goods or services and the person selling them.

Other fairly obvious parties to the transaction are the bank that issued the card and

the credit-card network, such as VISA, MasterCard, or Discover Card. Another entity

AO 72A
(Rev.8/82)

to the transaction that most customers are unaware of is the payment-processing company, known in the industry as an independent sales organization ("ISO"). Doc. No. [1], p. 6, ¶18. An ISO works with merchants, banks, credit-card networks, and back-end processing companies to ensure that transactions are properly credited to the merchant and charged to the customer through the bank or other financial institution. Id. p. 7, ¶¶19–21.

Defendant, North American Bancard, LLC ("NAB") is an ISO. Id. p. 6, ¶18. NAB provides account-management and merchant-support services, but it primarily earns its revenue through fees charged for processing credit and debit card payments for merchants. Id. p. 6, 8, ¶¶14–17, 22. NAB receives a small percentage of the transaction amount for each transaction it processes. Id. p. 8, ¶22. Plaintiffs, and the class they seek to represent, are merchants who utilized NAB's services, and allege that NAB fraudulently charged them inflated fees. Id. pp. 8–9, ¶¶23–24. Essentially, Plaintiffs aver that NAB is required to "pass through" Network Access Brand Usage ("NABU") fees, which are fees charged by the credit-card networks. Id. p. 9, ¶26. NAB allegedly charged inflated NABU fees and kept the excess proceeds for itself in violation of the merchant service agreements Plaintiffs entered into. See id. pp. 12–15, 20–22, ¶¶ 35–47, 63–69. Plaintiffs assert that NAB "deceptively misrepresented [the]

2

AO 72A
(Rev.8/82)

inflated fees as neutral network fees over which NAB [ ] has no control" in the monthly invoices it sent to Plaintiffs. Id. p. 12, ¶37.

Plaintiffs attached a copy of the merchant service agreement to their complaint.[1] The first page of the agreement has NAB's logo and phone number in the header. Doc. No. [1-10], p. 2. At the bottom of the page, Plaintiffs are directed to contact NAB if they have any "questions regarding merchant processing." Id. However, the contract does not specifically list NAB as a party, but rather states that the agreement "is between [Global Payments Direct, Inc. ("Global Direct")], the Member [Bank] and [Plaintiffs]." See id. p. 3, ¶1. The merchant service agreement goes on to provide a specific fee schedule for the card-network-access fees, and states that "[c]ard association assessments will be passed through." Id. p. 11. On the signature page, there are signature lines for Plaintiffs, Global Direct, Wells Fargo Bank, and an unspecified ISO. See id. p. 12. By signing the contract, Plaintiffs authorized NAB to "initiate automate deposit or debit . . . entries to [Plaintiffs'] bank

---

[1] Ordinarily, when "matters outside the pleading are presented to and not excluded by the court [in conjunction with a motion to dismiss], the motion must be treated as one for summary judgment." Fed. R. Civ. P. 12(d); see also Brooks v. Blue Cross & Blue Shield of Florida, Inc., 116 F.3d 1364, 1371 (11th Cir. 1997). However, the Court may consider the merchant service agreement without converting the motion into a motion for summary judgment because (1) the document is central to Plaintiffs' claims, and (2) the authenticity is not challenged. See Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005).

3

account[s]" to collect merchant fees, "subject to and only as pursuant to [NAB's] separate written agreement with Global Direct." Id.

## II.   LEGAL STANDARD

### A.   Motion to Dismiss

In considering a motion to dismiss, the Court must accept the well-pled factual allegations of the complaint as true, but "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002). Dismissal is only proper if "it is plain that the plaintiff can prove no set of facts that would support the claims in the complaint." Id. To survive a motion to dismiss, a plaintiff need only state a claim that is plausible on its face — that is, a claim based on factual allegation that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

### B.   Georgia State Law

Plaintiffs also assert claims for breach of contract, fraud, and unjust enrichment. The elements for a breach of contract claim, under Georgia law, are generally defined as: "(1) breach and the (2) resultant damages (3) to the party who has a right to complain about the contract being broken." Dewrell Sacks, LLP v.

4

Chicago Title Ins. Co., 324 Ga. App. 219, 223, 749 S.E.2d 802, 806 (2013). But to have a breach of contract a plaintiff must, of course, also show a valid contract and a defendant who was bound to abide by the terms of the contract.

A valid contract requires consideration, which is any bargained for exchange of performance or promises. O.C.G.A. §§ 13-3-1; 13-3-42(a). The assent of the parties to the terms of the contract is also essential; if the parties fail to create a binding agreement among themselves, the Court cannot create one for them. Id. § 13-3-2; Villani v. Edwards, 251 Ga. App. 293, 294, 554 S.E.2d 184, 186 (2001). However, the mere fact that a party failed to sign a contract will not negate a finding that the party has assented to its terms. Warthen v. Moore, 258 Ga. 198, 199, 366 S.E.2d 666, 667 (1988). Where there is ambiguity as to whether a valid contract exists, parol evidence may be used to prove or disprove the existence of the contract. BellSouth Advert. & Pub. Corp. v. McCollum, 209 Ga. App. 441, 444, 433 S.E.2d 437, 440 (1993).

"The tort of fraud has five elements: a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff." Crawford v. Williams, 258 Ga. 806, 806, 375 S.E.2d 223, 224 (1989). "[U]njust enrichment is basically an equitable doctrine" based on the principle "that the benefitted party equitably ought to either return or

AO 72A
(Rev.8/82)

compensate for the conferred benefits." Hollifield v. Monte Vista Biblical Gardens, Inc., 251 Ga. App. 124, 130, 553 S.E.2d 662, 669 (2001).

## III. ANALYSIS

Defendant admits Plaintiffs paid it money in exchange for services, but maintains that it never had a contractual relationship with Plaintiffs and never made any kind of representations to Plaintiffs that induced them to pay for its services. In support of its Motion to Dismiss, NAB makes three arguments. First, it contends that it cannot be liable for breach of contract because it is not a party to the merchant service agreements. See Doc. No. [13-1], pp. 5–7. Second, NAB asserts that it cannot be liable for Plaintiffs' claims of fraud and unjust enrichment because it did not make the alleged misrepresentations in the contract. Id. pp. 7–8. Finally, NAB argues that, even if Plaintiffs can state a claim for relief, they cannot simultaneously bring breach-of-contract and fraud claims based on the same conduct. Id. pp. 9–10. The Court addresses each of these arguments in turn.[2]

### A.     Whether NAB is Bound by the Contract

NAB's argument that it is not a party to the contract centers around the sentence of the merchant service agreement that states the contract "is between

---

[2] In its brief in support of the Motion to Dismiss, NAB also argued that Plaintiffs had not demonstrated that the amount in controversy in this suit exceeds $5,000,000. See Doc. No. [13-1], p. 11. However, Defendant withdrew this argument, and thus the Court does not address it. See Doc. No. [14].

Global Direct, the Member [Bank] and [Plaintiffs]." <u>See</u> Doc. No. [1-10], p. 3, ¶1. Because NAB is not specifically identified in this sentence, it argues it is not bound by the terms of the merchant service agreement. Doc. No. [13], pp. 5–6. But the matter is not so cut and dried. By accepting the contract, Plaintiffs authorized NAB to "initiate automate deposit or debit . . . entries to [Plaintiffs'] bank account[s]" to collect merchant fees, "subject to and only as pursuant to [NAB's] separate written agreement with Global Direct." Doc. No. [1-10], p.12. NAB argues that this provision creates no mutual obligations between it and Plaintiffs because the provision contains "no language saying that NAB is obligated to make those entries or to undertake any other responsibility of any kind." Doc. No. [23], p. 4. But the paragraph in question did impose a responsibility on NAB. Specifically, NAB was required to comply with its agreement with Global Direct in order to be allowed to make deposit or debit entries to Plaintiffs' accounts.

NAB acknowledges that it did in fact make the debit and credit entries to Plaintiffs' bank accounts, but argues that Plaintiffs cannot show "why NAB's performance under a separate contract . . . somehow binds it" to the merchant service agreements. Doc. No. [23], p. 6. The answer should be obvious. The "separate written agreement with Global Direct" was incorporated by reference into the merchant service agreements. <u>See</u> Doc. No. [1-10], p.12. Thus, NAB can only make the debit and

7

credit entries if it does so in accordance with the separate agreement. Id. An analogy is useful in understanding the principles at work. Say a home-buyer contracts with a contractor for a new house. The contract may say that it is "between" the home-buyer and the contractor, but have a provision whereby a subcontractor agrees to be paid to do the plumbing in accordance with a "separate written agreement" that the subcontractor has with the contractor. The plumber has a right to compensation in exchange for doing the plumbing in the house, but only if it is done in a particular manner. If the subcontractor fails to preform in accordance with the contract, it may be liable to the home-buyer.

Here, NAB agreed to *only* make debit and credit entries to Plaintiffs' bank accounts in a particular manner. The merchant service agreements thus provided NAB with a right—the right to collect merchant fees—but imposed on it an obligation—the obligation to abide by its agreement with Global Direct. This qualifies as the consideration NAB argues is missing from the merchant service agreements. See O.C.G.A. § 13-3-42(a). The fact that the provision references a separate written agreement with Global Direct is of no legal consequence. The requirements of the separate agreement are incorporated by reference because the provision states that NAB can only exercise its right if it complies with the terms of the agreement with Global Direct. NAB indisputably performed card-processing services for Plaintiffs

8

and was compensated for those services. The question is simply whether NAB performed in accordance with the terms of the merchant service agreements, and how much it was entitled to under those contracts. Plaintiffs present sufficient factual allegations to state a claim for NAB's alleged breach of contract. See Doc. No. [1] pp. 12–15, 20–22, ¶¶ 35–47, 63–69.

Other evidence also supports the proposition that NAB is a party to the contract because it agreed to be bound by the terms therein. NAB's logo and phone number appear in the header of the merchant service agreement, and the agreement specifically directs Plaintiffs to contact NAB if they have any "questions regarding merchant processing." Doc. No. [1-10], p. 2. Additionally, NAB is an ISO, and the merchant service agreements contain a signature line for indicating that the contract was accepted by the ISO. Id. p. 12. These facts do not prove that NAB is a party to the merchant service agreements. They are ambiguous. While no NAB representative signed the agreements, an entity need not sign a contract to be bound by it. Warthen, 258 Ga. at 199. Likewise, although Plaintiffs are specifically directed to contact NAB if they have merchant processing questions, this does not prove that NAB was obligated to provide card-processing services to Plaintiffs. However, the fact that NAB accepted money from Plaintiff in exchange for those services weighs in favor of a finding that it is a party. See Marett v. Brice Bldg. Co., 268 Ga. App. 778, 781, 603

9

S.E.2d 40, 43 (2004) (noting that a person can be "become bound by the terms of a contract, even though they do not sign it, where their assent is otherwise indicated, such as by the acceptance of benefits under the contract").

Even if the Court were to accept NAB's argument that it was not a party to the merchant service agreements at the time the agreements were signed, NAB could still be liable for breach of contract. An entity can "assume the obligation or ratify or adopt [a] contract," either expressly or by implication. Cent. of Georgia Ry. Co. v. Woolfolk Chem. Works, Ltd., 122 Ga. App. 789, 792, 178 S.E.2d 710, 713 (1970). Assumption by implication can occur where the entity's conduct "manifests an intent to become bound" by the terms of the agreement. Id. Courts must consider all circumstances in determining if a third-party has demonstrated an intent to be bound by a contract, "such as the subject matter of the contract, the third person's acts and words, whether he acquiesced in the terms of the contract, performed its obligations, or accepted the benefits." Id.; see also Sims v. Bayside Capital, Inc., 327 Ga. App. 47, 53, 755 S.E.2d 520, 525 (2014).

Again, these facts do not definitively prove or disprove that NAB is bound by the merchant service agreements. Because the facts paint an ambiguous picture, both sides may be able to present parole evidence as to whether a valid contract existed between the parties. BellSouth, 209 Ga. App. at 444. It is precisely because more facts

10

are needed that dismissal of the case at this stage would be improper. See Iqbal, 556 U.S. at 678. The Court concludes that Plaintiffs have presented sufficient well-pled facts that, when accepted as true, indicate that NAB is a party to the contract. NAB does not dispute that Plaintiffs have properly pled the other elements of a breach of contract claim.[3]

## B.   The Fraud and Unjust Enrichment Claims

NAB asserts that because it "is not a party to the contract on which Plaintiffs' fraud claims are based, the fraud claims should be dismissed." Doc. No. [23], p. 11. As the Court has already held, Plaintiffs have pled sufficient facts to demonstrate that NAB was a party to the merchant service agreements. But even if NAB could show that it was not a party, NAB's argument would still fail. A claim for fraud only requires five elements: "a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff." Crawford, 258 Ga. at 806. Notably absent is any requirement that a plaintiff show that the defendant was a party to a contract.

This is presumably because if a plaintiff can show that a defendant failed to abide by representations it made in a contract, the remedy is usually a claim for

---

[3] Because the Court holds that Plaintiffs have properly pled a breach-of-contract claim, the Court need not address Plaintiffs' argument that NAB is judicially estopped from arguing it is not a party to the merchant service agreements. See Doc. No. [16], pp. 16–20.

AO 72A
(Rev.8/82)

breach of contract. See Donchi, Inc. v. Robdol, LLC, 283 Ga. App. 161, 163, 640 S.E.2d 719, 721–22 (2007); Ainsworth v. Perreault, 254 Ga. App. 470, 471–72, 563 S.E.2d 135, 137–38 (2002). Regardless of whether NAB was a party to the merchant service agreements, it can be liable for fraud if it knowingly made a false representation to induce Plaintiffs to act or refrain from acting, and they suffered injury because they justifiably relied on the representation. Crawford, 258 Ga. at 806. Similarly, NAB argues that it cannot be liable for unjust enrichment "because the only wrongful conduct to which Plaintiffs point are misrepresentations contained in a contract to which NAB is not a party." Doc. No. [23], p. 14. Again, Plaintiffs are not required to show that NAB was a party to the merchant service agreements to state a claim for unjust enrichment. They need only show that NAB received a benefit—the fees it collected—and that it "equitably ought to either return or compensate" all or part of that benefit. See Hollifield, 251 Ga. App. at 130.

NAB seems to believe that the only way it could have made a representation to Plaintiffs or have induced Plaintiffs is by being a party to the merchant service agreements. But of course fraud and unjust enrichment claims are almost always asserted in the *absence* of any contractual relationship between the parties. Going back to the analogy of the home-buyer helps to illustrate the point. The subcontractor might explicitly represent to the home-buyer that only uses the highest quality

12

material, when in fact the subcontractor uses low quality material. If the home-buyer then agrees to buy the house, and to pay a wrongfully inflated price, based on the fraudulent misrepresentation by the subcontractor, the home-buyer may be able to state fraud and unjust-enrichment claims, regardless of whether the subcontractor signs the building contract or is explicitly named in it.

Similarly, here, Plaintiffs specifically allege that NAB promised that it would charge certain NABU fees, but that it in fact systematically inflated the NABU fees it charged and kept the difference. Doc. No. [1], pp. 11–12, ¶¶31, 35–36. Defendant notes the alleged promise is contained in the merchant service agreements, and maintains that it did not make the representation. Doc. No. [23], pp. 10–11. However, Plaintiffs allege that NAB made the representations in the contract with respect to the card-processing fees that would be charged. See Doc. No. [1], p. 11, ¶31. NAB is, of course, free to argue that it did not make the representations that Plaintiffs allege, but this issue presents a factual dispute that the Court cannot resolve at the motion to dismiss stage.

The evidence noted above indicates that NAB may have been responsible for the representations in the contract with respect to the card-processing fees. The merchant service agreements direct Plaintiffs to contact NAB if they have any "questions regarding merchant processing." Doc. No. [1-10], p. 2. More important

13

still, Plaintiffs allege that, in the monthly invoices, NAB "deceptively misrepresented [the] inflated fees as neutral network fees over which NAB [ ] has no control." Doc. No. [1], p. 12, ¶37. If NAB genuinely believed that it was entitled to greater compensation for its services than was provided for in the merchant service agreements, it seems odd that NAB would hide the increased charges it kept for itself as "network fee costs imposed by the card networks." See id. If Defendant deliberately misrepresented the fees it was charging, and the reason why it was charging those fees, so that it could bilk Plaintiffs, it could be liable for fraud and may have been unjustly enriched. See Crawford, 258 Ga. at 806; Hollifield, 251 Ga. App. at 130. Plaintiffs have pled sufficient factual allegations that, when accepted as true, state plausible claims for fraud and unjust enrichment, regardless of whether NAB was a party to the merchant service agreements.

## C.   Whether Plaintiffs' can Plead Both Fraud and Breach of Contract

Finally, NAB argues that "Georgia law does not allow" Plaintiffs to simultaneously pursue "both contract and fraud claims for the same conduct." Doc. No. [23], pp. 12–13. Because this action was filed under the Court's diversity jurisdiction, the Court must apply Georgia's substantive law. However, on procedural issues, such as whether Plaintiffs can plead claims in the alternative, the Court applies federal law. SeeHorowitch v. Diamond Aircraft Indus., Inc., 645 F.3d 1254, 1257 (11th Cir. 2011). Federal Rule of Civil Procedure 8(d) unquestionably allows plaintiffs to plead their claims in the alternative. Fed. R. Civ. P. 8(d)(2).

AO 72A
(Rev.8/82)

Defendant's argument that Plaintiffs cannot recover under both their fraud and breach-of-contract claims is of no import; the federal rules allow a party to state separate claims "regardless of consistency." Id. 8(d)(3).

Defendant acknowledges that Plaintiffs can assert claims in the alternative, but asserts that "Plaintiffs did not, in fact, plead their fraud claims in the alternative" because the unjust enrichment claim was the only claim explicitly listed as being asserted in the alternative. Doc. No. [23], p. 13. However, the federal rules do not require any particular "technical form" for pleading claims in the alternative. See Fed. R. Civ. P. 8(d)(1). Plaintiffs fraud claims can constitute alternative grounds for relief regardless of whether Plaintiffs explicitly list those claims as being "in the alternative." Defendant's last argument on this point is that "the merger clause contained in the contract affirmatively forecloses Plaintiffs' fraud claims." Doc. No. [23], p. 13. However, Plaintiffs correctly note that the merger clause would not prevent them from asserting fraud claims based on the allegedly fraudulent statements in the contract itself. See Doc. No. [16], p. 19–20. Additionally, as Defendant itself repeatedly points out, it is not clear that Defendant is a party to the contract. If NAB is not a party, Plaintiffs will not be able to assert their breach-of-contract claim against it, but NAB will likewise not be able to utilize the merger clause to argue that the contract represents the complete agreement between it and Plaintiffs.

15

AO 72A
(Rev.8/82)

Simply put, Defendant's concerns that Plaintiffs cannot recover under all of their different claims simultaneously is premature. As discussed above, Plaintiffs have sufficiently pled their claims, and they may plead them as alternative bases for relief. The motion to dismiss must be denied because the Court cannot say that there is no set of facts that could support Plaintiffs claims, as pled. See Oxford Asset Mgmt., 297 F.3d at 1188.[4]

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (Doc. No. [13]) is DENIED.

IT IS SO ORDERED, this ___4th___ day of August, 2016.

_____
HONORABLE STEVE C. JONES
UNITED STATES DISTRICT JUDGE

---

[4] The Court notes that a claim for unjust enrichment may also be unavailable if, in fact, there was a contractual relationship between the parties. See Bonem v. Golf Club of Ga., Inc., 264 Ga. App. 573, 578, 591 S.E.2d 462, 467–68 (2003) (holding that where "[a] legal contract governs the dispute at issue" a party "may not rely on unjust enrichment"). Nevertheless, Plaintiffs properly pled the unjust enrichment claim as an alternative grounds for relief. See Fed. R. Civ. P. 8(d)(2).

16

AO 72A
(Rev.8/82)